Christopher W. Healy
Evan K. Farber
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
*Attorneys for Plaintiff*
*Marc Latamie*

**14 CV 7554**

**JUDGE FAILLA**



UNITED STATED DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

MARC LATAMIE,

      Plaintiff,

  vs,

BENRIMON CONTEMPORARY LLC, DAVID
BENRIMON FINE ART LLC, LEON
BENRIMON, and DAVID BENRIMON

      Defendants.

---------------------------------------------------------- x

Case No. _____

**COMPLAINT AND
<u>DEMAND FOR JURY TRIAL</u>**

   Plaintiff Marc Latamie ("Mr. Latamie" or "Plaintiff"), by and through his counsel, Reed

Smith LLP, brings this action against defendants Benrimon Contemporary LLC ("Benrimon

Contemporary"), David Benrimon Fine Art LLC ("Benrimon Fine Art"), Leon Benrimon, and

David Benrimon (collectively, "Defendants"), and alleges as follows:

<u>NATURE OF THE ACTION</u>

  1.  This action stems from an agreement between Mr. Latamie and Defendant

Benrimon Contemporary, pursuant to which Mr. Latamie purchased a set of ten prints of Mao

Zedong which were created by Andy Warhol in 1972. Mr. Latamie fully paid for this set of

prints, yet Benrimon Contemporary has delivered only four of the ten prints and, despite repeated demands spanning over a year, has failed to deliver the remaining six prints.

2.     Upon information and belief, Benrimon Contemporary is owned and operated by Defendant Leon Benrimon.  Leon's father, Defendant David Benrimon, upon information and belief, owns and operates Benrimon Fine Art.  Throughout most of the period from July 2013 to the present, whenever Mr. Latamie communicated with Defendants in attempting to secure delivery of the prints, he communicated with all four Defendants interchangeably, as Defendants had told him he should.

3.     Defendants' excuses for not delivering the remaining works have been nonsensical and sometimes have contradicted each other.  Mr. Latamie's requests to view the artwork in storage, just to ensure that the goods he purchased still exist and are still in Benrimon Contemporary's possession, have been similarly rebuffed.

4.     Mr. Latamie has recently discovered that in or about February 2014, precisely at the same time that David Benrimon and Benrimon Fine Art were assuring Mr. Latamie that they would attempt to help him secure delivery of the prints on behalf of Benrimon Contemporary, Benrimon Fine Art was offering the very same Mao prints for sale to other potential purchasers.

5.     Based on these actions by Defendants, as set forth in greater detail below, Mr. Latamie now seeks recovery of the full purchase price of the complete Mao prints or, in the alternative, immediate delivery of the remaining prints.  Mr. Latamie seeks recovery for Benrimon Contemporary's breach of contract; Leon Benrimon, David Benrimon, and Benrimon Fine Art's tortious interference with contract; Leon Benrimon and Benrimon Contemporary's fraud; Benrimon Fine Art's conversion; in the alternative to breach of contract, on theories of

promissory estoppel and unjust enrichment against Benrimon Contemporary; and on an alter ego theory against Leon Benrimon, David Benrimon, and Benrimon Fine Art.

## THE PARTIES

6.    Plaintiff Marc Latamie is an individual who is a citizen of France.  Mr. Latamie is an artist, art historian, and art advisor and curator for private collections.  Mr. Latamie has an extensive background and is highly regarded in the art industry.  As an artist, he has worked in a variety of media, and his artwork has been featured in exhibitions in art museums around the world.  As an art historian, he has lectured at prominent institutions including l'Ecole du Louvre, New York University, Columbia University, and Harvard University.  After earning a degree in Art History and Visual Art from the University of Paris VIII, Mr. Latamie was hired as a Lecturer at the Musée National d'Art Moderne in Paris (the Pompidou Center), where he introduced major exhibitions for such renowned artists as Salvador Dalí, Jackson Pollock, René Magritte, and Willem de Kooning.

7.    As an art advisor and curator, Mr. Latamie buys and sells art on his own behalf and on behalf of numerous clients, many of whom prefer to remain strictly anonymous, and who depend heavily on his extensive knowledge, skill and acumen in the art world.

8.    Upon information and belief, defendant Benrimon Contemporary LLC ("Benrimon Contemporary") is an art gallery located in New York, New York and focused on displaying and dealing in contemporary art.  Upon information and belief, Benrimon Contemporary is owned and operated by Leon Benrimon.

9.    Upon information and belief, defendant David Benrimon Fine Art LLC ("Benrimon Fine Art") is an art gallery located in New York, New York and focused on displaying and dealing in contemporary art.  Upon information and belief, Benrimon Fine Art is owned and operated by David Benrimon.

10.     Upon information and belief, defendant Leon Benrimon is a citizen and resident of New York State.

11.     Upon information and belief, defendant David Benrimon is a citizen and resident of New York State, and the father of Leon Benrimon.

## JURISDICTION AND VENUE

12.     This Court has federal diversity jurisdiction pursuant to 28 U.S.C § 1332 because Plaintiff and Defendants are of diverse citizenship and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

13.     Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391 because, among other reasons: (i) upon information and belief, Defendants Benrimon Contemporary and Benrimon Fine Art both have their principal place of business in this district; (ii) a substantial part of the events or omissions giving rise to the claims occurred in this district; and (iii) Defendants are subject to personal jurisdiction in this district.

14.     This Court has personal jurisdiction over all Defendants in this action because, among other reasons: (i)  upon information and belief, Defendants Benrimon Contemporary and Benrimon Fine Art both have their principal place of business in New York State; (ii) upon information and belief, Defendants Leon Benrimon and David Benrimon are both citizens and residents of New York State; (iii) a substantial part of the events or omissions giving rise to the claims occurred in New York State; (iv) all Defendants transact, or have transacted during the relevant time period, business in New York State; (v) all Defendants solicit, or have solicited during the relevant time period, business in New York State; (vi) all Defendants derive, or have derived during the relevant time period, substantial revenue from services rendered in New York State; (vii) all Defendants own, use, or possess, or have owned, used, or possessed during the relevant time period, real property within New York State; and (viii) Defendants have committed

4

tortious acts within or without New York State which caused, and which Defendants should have reasonably expected to cause, injury to persons within New York State, and Defendants regularly transact business in New York State and derive substantial revenue from interstate commerce.

## FACTUAL ALLEGATIONS

### A.   Benrimon Contemporary Sells the Artwork to Mr. Latamie

15.    On or about February 2, 2012, Mr. Latamie entered into an agreement with Benrimon Contemporary, pursuant to which Mr. Latamie would purchase from Benrimon Contemporary (a) one painting of Mao Zedong, in acrylic and silkscreen ink on canvas, done in 1973 by Andy Warhol (the "Painting"); and (b) one set of ten prints of Mao Zedong, in screenprint on Beckett High White paper, done in 1972 by Andy Warhol (the "Prints," and together with the Painting, the "Artwork"). Attached hereto as Exhibit A is the invoice issued by Benrimon Contemporary reflecting the sale of the Artwork to Mr. Latamie.

16.    Pursuant to his agreement with Benrimon Contemporary, Mr. Latamie agreed to pay Benrimon Contemporary $1,000,000 for the Painting and $750,000 for the Prints. After it received payment, Benrimon Contemporary was to ship the Artwork to Mr. Latamie care of Day and Meyer, Murray and Young Corp. ("Day and Meyer"), a highly regarded warehouse which specializes in handling and storing fine art and is often used as a storage and delivery point for artwork that is changing hands through a sale.

17.    Prior to entering into the agreement with Benrimon Contemporary, Mr. Latamie inspected the Artwork and was provided with assurances that the Artwork was owned, or at least in the possession, custody and control, of Benrimon Contemporary. Those assurances were essential in convincing Mr. Latamie to purchase the Artwork from Benrimon Contemporary, because Mr. Latamie would have confidence both that the Artwork was available to be delivered

and that the Artwork would not be damaged or its quality otherwise compromised prior to its delivery. However, those assurances were false.

18.     Between February 2, 2012, when the agreement was entered into, and July 19, 2013, Mr. Latamie made payment to Benrimon Contemporary in installments of varying sizes. The total amount of Mr. Latamie's payments was $1,750,000, which equaled the total agreed payment price for the Artwork. This total payment was received by Benrimon Contemporary.

19.     Benrimon Contemporary delivered the Painting to Mr. Latamie, but failed to deliver the full set of Prints.

**B.     Mr. Latamie Attempts to Secure Delivery of the Prints**

20.     Beginning on July 21, 2013, two days after completing payment, Mr. Latamie wrote to Leon Benrimon, on behalf of Benrimon Contemporary, requesting delivery of the Prints, care of Day and Meyer. Mr. Latamie continued thereafter to make requests, including in writing and by telephone, for over a year, through August 2014.

21.     Without limitation, Mr. Latamie sent requests in writing to Leon and/or David Benrimon, on behalf of Benrimon Contemporary, on September 16 and 18, and November 1, 2013, and January 24, February 10, 19 and 25, April 17 and 25, June 18, July 1, 3, 15, and 25, and August 8, 2014.

22.     Mr. Latamie also regularly placed phone calls to Leon and/or David Benrimon throughout this time.

23.     Mr. Latamie also approached Leon and/or David Benrimon in person several times to discuss these issues. Most recently, Mr. Latamie met with Leon Benrimon at an Art Basel event in June in Switzerland and requested delivery of the remaining Prints.

24.     Leon and David Benrimon often failed to respond to Mr. Latamie's emails and phone calls.  When they did respond, and when Mr. Latamie confronted them in person, they provided generally evasive responses, either offering vague promises that delivery of the Prints would be arranged in the near future – promises which were never fulfilled – or offering various excuses for Benrimon Contemporary's failure to deliver the Prints.

25.     These excuses were often nonsensical and sometimes contradicted other factual assertions, or promises of imminent delivery, that Leon or David Benrimon had made.  At various times, the excuses provided to Mr. Latamie included difficulties related to an otherwise undisclosed investor, Leon Benrimon's divorce proceedings, a Jewish holiday, Hurricane Sandy, Leon Benrimon's travel difficulties, and Leon Benrimon's lack of cash liquidity.

26.     In several of these communications, Mr. Latamie requested that if there would be a delay in delivery, he be given an opportunity to inspect the works at their storage site.  Leon and David Benrimon consistently rebuffed these requests as well.

27.     Although Leon Benrimon was the principal of Benrimon Contemporary and David Benrimon was the principal of Benrimon Fine Art, Mr. Latamie dealt with all four Defendants nearly interchangeably when communicating about delivery of the Prints.  That is because in late 2013, Defendants informed Mr. Latamie that Leon Benrimon would be unavailable due to his divorce proceeding, and that Mr. Latamie should communicate with Benrimon Contemporary through Defendants David Benrimon and Benrimon Fine Art, as well as through Leon Benrimon.  Defendants also represented that all four Defendants were working together and would help resolve the outstanding delivery issues on Benrimon Contemporary's behalf.

28.     Thereafter, Mr. Latamie's written communications were directed to both Leon Benrimon and David Benrimon, and his telephone calls were directed to either Leon Benrimon or David Benrimon, depending on their availability.   When Defendants did respond, responses came sometimes from Leon Benrimon and sometimes from David Benrimon, and it was apparent that Leon and David Benrimon closely coordinated their responses to Mr. Latamie.

29.     Tellingly, it was not until responding to a demand letter from counsel in mid-August 2014 that David Benrimon asserted that "I am no longer involved with this transaction."

### C.     Benrimon Contemporary Does Not Own or Have Possession of the Prints

30.     In the months after Mr. Latamie finishing making full payment in July 2013, it became clear that Benrimon Contemporary did not have, and had never had, ownership, possession, custody, or control over the Prints, contrary to the assurances that Benrimon Contemporary had provided to Mr. Latamie before he agreed to buy the Artwork.

31.     On or about January 17, 2014, Leon Benrimon sent Mr. Latamie a chart listing the status of the ten Prints.  None of them were listed as being ready for delivery to Mr. Latamie or even as owned by Benrimon Contemporary.  Most were listed as "inspected, negotiating" or "inspecting next week."  One was listed simply as "calling."

32.     On or about February 26, 2014, Leon Benrimon sent Mr. Latamie an updated chart again listing the status of the ten Prints.  Five of the ten Prints were listed as "done"; one as "invoiced, need to complete purchase (next week)"; two as "negotiating in NYC"; and two simply as "still need."

33.     Through these status updates, as well as in multiple other emails and telephone conversations, Leon and David Benrimon acknowledged that they did not own the Prints, and acknowledged that delivery of at least five of the Prints remained outstanding.

34.     In fact, even this acknowledgment was misleading because only four, not five, of the Prints were delivered by Benrimon Contemporary.  In an effort to help resolve the issues expeditiously, Mr. Latamie himself began investigating potential sources for Benrimon Contemporary to purchase the Prints.  In several instances Mr. Latamie passed along leads or relevant information to Leon or David Benrimon, and in one instance Mr. Latamie arranged to purchase one of the Prints himself, subject to reimbursement by Benrimon Contemporary. Accordingly, while five of the ten Prints were "done," only four had been delivered by Benrimon Contemporary.  Benrimon Contemporary never reimbursed Mr. Latamie for the Print that he had procured himself.

**D.     Benrimon Fine Art Markets the Prints for Sale**

35.     To date, Benrimon Contemporary has still delivered to Mr. Latamie only four of the ten Prints.  Despite numerous promises, the remaining six Prints remain undelivered.

36.     The Prints were intended by the artist – and were purchased by Mr. Latamie – as a complete set of ten.  While each individual Print can be and often is bought and sold separately, the Prints are ultimately more valuable as a complete set of ten than any portion of the set might be.  The cliché that "the whole is worth more than the sum of its parts" is accurate in this instance.

37.     As Mr. Latamie later discovered, during this same period of time, after he had paid in full for the Artwork but before the Prints were delivered, and during the time that David Benrimon was communicating with Mr. Latamie on behalf of Benrimon Contemporary, Benrimon Fine Art was advertising the Prints for sale to other prospective purchasers.  In a February 6, 2014 email to undisclosed recipients entitled "New Available Warhol Sets," Benrimon Fine Art listed as available a set of ten prints of Mao done in 1972 by Andy Warhol,

and bearing other characteristics similar to those of the Prints which Mr. Latamie had purchased. That February 6, 2014 email from Benrimon Fine Art is attached hereto as Exhibit B.  Thus, while making promises to Mr. Latamie that the Prints would be available to him soon, David Benrimon was in fact attempting to sell the very same Prints to others.

## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendant Benrimon Contemporary)

38.    Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

39.    As set forth herein, on or about February 2, 2012, Mr. Latamie and Benrimon Contemporary entered into a contract pursuant to which Mr. Latamie would purchase the Artwork from Benrimon Contemporary for a total of $1,750,000, including the Prints for a total of $750,000.  Benrimon Contemporary was to ship the Artwork to Mr. Latamie care of Day and Meyer.

40.    Mr. Latamie performed under the contract by making payments totaling $1,750,000 to Benrimon Contemporary by July 19, 2013.

41.    Despite due demand, Benrimon Contemporary failed to perform under the contract, in that it delivered only four of the ten Prints to Mr. Latamie.  The remaining six of the ten Prints have never been delivered.   Accordingly, Benrimon Contemporary breached its obligation under the contract.

42.    As a direct and proximate result of Benrimon Contemporary's material breach of the contract, Mr. Latamie has suffered, and continues to suffer, damages in an amount to be proven at trial, but in any event not less than $550,000.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Contract against Defendants Leon Benrimon, David Benrimon, and Benrimon Fine Art)

43.     Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

44.     As set forth herein, Mr. Latamie entered into a valid contract with Benrimon Contemporary for the purchase of the Artwork.

45.     At Defendants' instructions, Mr. Latamie communicated frequently with Leon Benrimon, David Benrimon, and Benrimon Fine Art in an effort to secure delivery of the Prints.

46.     Rather than assist Benrimon Contemporary in securing delivery of the Prints, Leon Benrimon, David Benrimon, and Benrimon Fine Art repeatedly provided Mr. Latamie with evasive answers, false promises, and misleading excuses, thereby intentionally procuring Benrimon Contemporary's breach of the contract without justification.

47.     Benrimon Contemporary did breach its contract with Mr. Latamie by failing to deliver six of the ten Prints.

48.     As a direct and proximate result of Benrimon Contemporary's material breach of the contract which was intentionally procured by Leon Benrimon, David Benrimon, and Benrimon Fine Art, Mr. Latamie has suffered, and continues to suffer, damages in an amount to be proven at trial, but in any event not less than $550,000.

49.     Based on Defendants' conduct as set forth herein, Mr. Latamie is also entitled to an award of punitive damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Common Law Fraud against Defendants Leon Benrimon and Benrimon Contemporary)

50.     Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

51.     Before Mr. Latamie entered into the contract with Benrimon Contemporary, Leon Benrimon and Benrimon Contemporary assured Mr. Latamie that Benrimon Contemporary owned, or at least possessed, the Artwork.  These assurances were false.

52.     Leon Benrimon and Benrimon Contemporary were aware that these assurances were false at the time they were provided.

53.     Those assurances were essential in convincing Mr. Latamie to purchase the Artwork from Benrimon Contemporary, because Mr. Latamie would have confidence both that the Artwork was available to be delivered and that the Artwork would not be damaged or its quality otherwise compromised prior to its delivery.

54.     Leon Benrimon and Benrimon Contemporary were aware that these assurances were essential to convincing Mr. Latamie to enter into the contract, and intended for Mr. Latamie to rely on these assurances by entering into the contract.

55.     Mr. Latamie did, in fact, rely on these assurances in agreeing to purchase the Artwork from Benrimon Contemporary.  His reliance was justified because the assurances were given in conjunction with an inspection of the Artwork arranged by Leon Benrimon and Benrimon Contemporary, through which they demonstrated to Mr. Latamie their possession, custody and control of the Artwork.

56.     As a direct and proximate result of these false assurances provided by Leon Benrimon and Benrimon Contemporary, Mr. Latamie has suffered, and continues to suffer, damages in an amount to be proven at trial, but in any event not less than $550,000.

57.     Based on Defendants' conduct as set forth herein, Mr. Latamie is also entitled to an award of punitive damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Conversion against Defendant Benrimon Fine Art)

58.     Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

59.     Pursuant to his contract with Benrimon Contemporary, and having paid the full purchase price, Mr. Latamie has the right to own and possess the Prints.

60.     However, as Mr. Latamie later discovered, Benrimon Fine Art was advertising the Prints for sale to other prospective purchasers, at the very time that David Benrimon and Benrimon Fine Art were purporting to assist Mr. Latamie in obtaining possession of them. Benrimon Fine Art thus unlawfully asserted dominion and control over the Prints and marketed them for sale to others.

61.     Mr. Latamie was thus deprived of his right to possess the Prints.

62.     Despite Mr. Latamie's repeated demands for the Prints, including to Benrimon Fine Art, the Prints were never delivered to Mr. Latamie.

63.     As a direct and proximate result of Benrimon Fine Art's unauthorized assertion of dominion and control over the Prints, Mr. Latamie has suffered, and continues to suffer, damages in an amount to be proven at trial, but in any event not less than $550,000.

64.     Based on Defendant Benrimon Fine Art's conduct as set forth herein, Mr. Latamie is also entitled to an award of punitive damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Promissory Estoppel against Defendant Benrimon Contemporary)

65.     Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

13

66.   In the alternative to the First Cause of Action, Benrimon Contemporary made a clear and unambiguous promise to Mr. Latamie to deliver the Artwork to him if he were to pay Benrimon Contemporary the sum of $1,750,000.

67.   In reliance on that promise, Mr. Latamie paid to Benrimon Contemporary the sum of $1,750,000.   Mr. Latamie's reliance on Defendants' promise was both reasonable and foreseeable.

68.   As a direct and proximate result of Benrimon Contemporary's promise, Mr. Latamie has suffered, and continues to suffer, damages in an amount to be proven at trial, but in any event not less than $550,000.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment against Defendant Benrimon Contemporary)

69.   Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

70.   In the alternative to the First Cause of Action, Benrimon Contemporary was enriched in the amount of $1,750,000 which it was paid Mr. Latamie.

71.   Benrimon Contemporary was unjustly enriched at Mr. Latamie's expense at least to the extent of that portion of the payment relating to Prints which were undelivered.

72.   In equity and good conscience, Benrimon Contemporary ought not to be allowed to retain that portion of the $1,750,000 relating to the undelivered Prints.   It would be unjust to allow Benrimon Contemporary to retain that portion of the payment.

73.   Accordingly, Mr. Latamie is entitled to a judgment in his favor for the full amount by which Benrimon Contemporary has been unjustly enriched, in an amount to be determined at trial, but in any event not less than $550,000.

## SEVENTH CAUSE OF ACTION
### (Alter Ego against Defendants Leon Benrimon, David Benrimon, and Benrimon Fine Art)

74.     Mr. Latamie repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

75.     Upon information and belief, Leon Benrimon, David Benrimon, and Benrimon Fine Art operated Benrimon Contemporary as their "front company" or alter ego.  By way of example only, upon information and belief:

a.     Benrimon Contemporary is owned and operated by Leon Benrimon.

b.     Benrimon Fine Art is owned and operated by David Benrimon.

c.     David Benrimon conspires with Leon Benrimon to operate Benrimon Contemporary, including by assuming control of the operations of Benrimon Contemporary at times when Leon Benrimon is unavailable or prefers to avoid contact with creditors.

d.     During all times relevant hereto, Benrimon Contemporary was never adequately capitalized.

e.     During all times relevant hereto, Benrimon Contemporary has not observed corporate formalities.

f.     Leon Benrimon opened and closed various bank accounts for Benrimon Contemporary at will for the express purpose of hiding funds from creditors, and directed that purchasers, including Mr. Latamie, make payments to certain specific bank accounts, including but not limited to bank accounts in the names of specific individuals rather than Benrimon Contemporary.

g.     Leon Benrimon opened and closed gallery spaces at will, and Benrimon Contemporary is currently or has recently operated out of the same gallery and office space as Benrimon Fine Art.

15

h.    Benrimon Contemporary and Benrimon Fine Art transfer artwork, including the Prints, between themselves at will, regardless of whether the artwork has been sold or is otherwise subject to claims by others.

76.    Leon Benrimon, David Benrimon, and Benrimon Fine Art exercise complete domination and control over Benrimon Contemporary, including, without limitation, in its dealings with Mr. Latamie.

77.    Benrimon Contemporary exercises no independent business discretion and does not sit at arms' length from Leon Benrimon, David Benrimon, and Benrimon Contemporary.

78.    Upon information and belief, Benrimon Contemporary is currently a shell corporation with no assets; instead, Leon Benrimon and David Benrimon have transferred its assets to Benrimon Fine Art.

79.    Accordingly, for the foregoing reasons, the interests of justice require that this Court disregard the corporate form of Benrimon Contemporary and enter judgment against Leon Benrimon, David Benrimon, and Benrimon Fine Art, jointly and severally.

**WHEREFORE**, Plaintiff Marc Latamie hereby requests judgment as follows:

1.    On the First Cause of Action, judgment against Defendant Benrimon Contemporary in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, and such other and further relief as this Court deems just and proper;

2.    On the Second Cause of Action, judgment against Defendants Leon Benrimon, David Benrimon, and Benrimon Fine Art in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, attorneys' fees, costs, punitive damages, and such other and further relief as this Court deems just and proper;

3.      On the Third Cause of Action, judgment against Defendants Leon Benrimon and Benrimon Contemporary in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, attorneys' fees, costs, punitive damages, and such other and further relief as this Court deems just and proper;

4.      On the Fourth Cause of Action, judgment against Defendant Benrimon Fine Art in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, attorneys' fees, costs, punitive damages, and such other and further relief as this Court deems just and proper;

5.      On the Fifth Cause of Action, judgment against Defendant Benrimon Contemporary in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper;

6.      On the Sixth Cause of Action, judgment against Defendant Benrimon Contemporary in an amount to be proven at trial, but in any event not less than $550,000, plus pre- and post-judgment interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper;

7.      On the Seventh Cause of Action, a finding that Defendants Leon Benrimon, David Benrimon, and Benrimon Fine Art are jointly and severally liable to Mr. Latamie for any judgment Mr. Latamie obtains against Defendant Benrimon Contemporary, and judgment against Defendants Leon Benrimon, David Benrimon, and Benrimon Fine Art thereupon.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims so triable asserted herein.

Dated:   New York, New York
         September 18, 2014

REED SMITH LLP

By: _____
Christopher A. Healy
Evan K. Farber
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Attorneys for Plaintiff*
*Marc Latamie*

# EXHIBIT A

February 06, 2012

**Sold to:**
Mr. Marc Latamie
DM FOUNTAIN, INC.
217 Thompson Street
New York, NY 10012
marclatam@aol.com

**Ship to:**
Day and Meyer, Murray and Young Corp.
1166 Second Avenue
New York, NY 10065

*Invoice #IN106*

**Andy Warhol**
*Mao (Complete Portfolio of 10)*, 1972
Screenprint on Beckett High White Paper
36 x 36 in. (91.44 x 91.44 cm)
[0715]



750,000.00

**Andy Warhol**
*Mao*, 1973
Acrylic and silkscreen ink on canvas
12 x 10 in. (30.48 x 25.4 cm)

[0716]

1,000,000.00

Sub-total                                                                **1,750,000.00**

*Deposit (non-refundable) received via wire transfer*               *100,000.00*

**Balance**                                                          **$ 1,650,000.00**

**Additional Deposit** of no less than 50% of the **Balance** to be received no later than *Thursday, February 16th, 2012*. **Remaining Balance** to be received no later than *Thursday, March 1st, 2012*. Additional Deposit and Remaining Balance to be paid via wire transfer.

USD Wire transfer information:
*Ultimate Beneficiary*
Benrimon Contemporary LLC
Account # 7218910474

*Beneficiary Bank*
Wells Fargo Bank N.A.,
120 7th Avenue, New York, NY 10011.
ABA # 121000248
Swift # WFBIUS6S

Agreed and accepted: _____
Marc Latamie, DM Fountain, Inc.

514 West 24th Street, 2nd Floor, New York, NY 10011   telephone 212 924 2400   facsimile 212 659 0054
www.bcontemporary.com                    electronic info@bcontemporary.com

# EXHIBIT B

Subscribe | Share ▼   Past Issues

Trans

See what is new at DBFA.

View this email in your browser

# David Benrimon Fine Art





**Andy Warhol (1928 - 1987)**
*Marilyn Monroe (set of 10)*, 1967
Screenprints in colors
~ 36 x 36 inches (91.4 x 91.4 cm)



**Andy Warhol (1928 - 1987)**
*Mao (set of 10)*, 1972
Screenprints in colors
~ 36 x 36 inches (91.4 x 91.4 cm)

**For more information contact:**
Rony More
Tel: +(212) 628-1600
email: rony@benrimon.com

**Our mailing address is:**
David Benrimon Fine Art LLC
21 East 65th Street, New York, NY
10065

www.benrimon.com

**Copyright © 2013 David Benrimon Fine Art LLC, All rights reserved.**

unsubscribe from this list    update subscription preferences

